```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: OCT 30 2007
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA           :

        - v. -                :

JOSEPH MCGIRL,                     :

        Defendant.             :

- - - - - - - - - - - - - - - - - - - - x

INFORMATION

07 Cr.

**07 CRIM 1001**

*Judge McMahon*

COUNT ONE
(Conspiracy To Commit Tax Fraud And
To Evade Currency Reporting Requirements)

The United States Attorney charges:

Background

1. At all times relevant to this Information, GPJ O'Donoghue, Inc., ESB Electric, Inc., and Dakom Services, Inc. (collectively, the "Companies") were companies headquartered in New York, New York, and engaged in the construction business. Each of the Companies was owned jointly by JOSEPH MCGIRL, the defendant, and a co-conspirator not named as a defendant herein ("CC-1"). GPJ O'Donoghue, Inc., was a subcontracting company managed by CC-1 that obtained construction contracts and then subcontracted different projects within a given contract to various subcontractors. ESB Electric, Inc., was a subcontracting company managed by MCGIRL that performed electrical work. Dakom Services, Inc., was a subcontracting company managed by MCGIRL that performed fire alarm installations.

2. The Companies were subchapter S-corporations ("S-corporations"). S-corporations are certain small business corporations that are tax-reporting but not tax-paying entities; that is, they are required to file U.S. Corporation Income Tax Returns, Form 1120S, but are not ordinarily required to pay income taxes in their own right. Rather, the income or loss from their operation, by law, flows through to their shareholders, who are required to declare such income or loss on their individual income tax returns.

3. At all times relevant to this Information, DJ McKeon, Inc., and Hubert Quinn, Inc. (collectively, the "Shell Companies") were shell companies created by JOSEPH MCGIRL, the defendant, and CC-1 for the purpose of overstating and falsifying business expenses purportedly incurred by the Companies.

### The Currency Reporting Requirements

4. At all times relevant to this Information:

a. Financial institutions within the United States, which include check-cashing establishments, were required by law to file a Currency Transaction Report ("CTR") with the Internal Revenue Service ("IRS") with regard to every transaction in currency in excess of $10,000 in which they were involved.

b. The financial institutions were required to include on the CTR the name, address, and Social Security number of the customer making the transaction, as well as information

concerning the nature of the transaction.  CTRs were intended to reveal the identities of both the person who conducted the transaction and the person for whom the transaction was conducted, which information assists the United States in criminal, tax, and regulatory investigations and proceedings.

        c.   It was unlawful to "structure" a transaction in currency for the purpose of evading the requirement that a financial institution file a CTR with the Government. "Structuring" includes, among other things, the practice of breaking down an amount of United States currency in excess of $10,000 into amounts of $10,000 or less and then conducting separate transactions in order to evade the requirement of filing a CTR.

        d.   The Internal Revenue Code and associated regulations require corporations that pay wages to employees to file Employer Quarterly Tax Returns, IRS Forms 941, on a quarterly basis.  Among other things, Forms 941 are supposed to report the total wages paid by an employer to its employees during the relevant reporting period, as well as the amounts required to be withheld by the employer as part of the federal income tax obligations of the employees, known as Federal Income Tax Withholding ("FITW").  Employers are also required to report and remit to the IRS certain amounts pursuant to the Federal Insurance Contributions Act ("FICA") and Federal Unemployment Tax

Act ("FUTA"). FICA contributions are made up of four components: the employer's and employee's equal shares of 6.2% for Social Security and 1.45% for Medicare taxes, totaling 15.3% of wages. The aforementioned FITW obligations, and those imposed pursuant to FICA and FUTA, are hereinafter referred to as "payroll tax obligations."

Means and Methods of the Conspiracy

5.   In or about 1997, JOSEPH MCGIRL, the defendant, and CC-1 created the Shell Companies, using a combination of fictitious addresses and a post office box to disguise the true ownership of the Shell Companies.  MCGIRL and CC-1 thereafter used the Shell Companies to conceal income earned by them and the Companies by writing checks to the Shell Companies from the Companies for amounts that were falsely and fraudulently booked by the Companies, and reported on the Companies' U.S. Corporate Income Tax Returns, Forms 1120S, as subcontracting expenses.

6.   In order to evade currency transaction reporting requirements and therefore defeat the ability of the IRS to use such reporting to detect tax evasion, JOSEPH MCGIRL, the defendant, and CC-1 also structured transactions so that CTRs would not be filed.  Specifically, MCGIRL and CC-1 instructed clients of the Companies to make payments in amounts under $10,000 so that checks cashed from these transactions would not cause a CTR to be filed.

7. JOSEPH MCGIRL, the defendant, and CC-1 also cashed some of the checks from clients that were made out in amounts less than $10,000 at a check-cashing establishment and then used the cash to pay the salaries of employees of the Companies, thereby causing the evasion of the payroll tax obligations of the Companies and their employees.

### The Conspiracy

8. From in or about 1997 through in or about 2002, in the Southern District of New York and elsewhere, JOSEPH MCGIRL, the defendant, and others known and unknown, unlawfully, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to defraud the United States and an agency thereof, to wit, the IRS of the United States Department of the Treasury, and to commit offenses against the United States, to wit, violations of Title 26, United States Code, Section 7201 and 7206(1), and Title 31, United States Code, Section 5324(a)(3) and (d)(2).

### The Objects of the Conspiracy

9. It was a part and object of the conspiracy that JOSEPH MCGIRL, the defendant, and others known and unknown, unlawfully, willfully and knowingly, would and did defraud the United States and the IRS by impeding, impairing, obstructing and defeating by deceitful and dishonest means the lawful functions of the IRS in the ascertainment, evaluation, assessment and

collection of income taxes.

10. It was a further part and an object of the conspiracy that, during the period from in or about 1997 through in or about 2002, JOSEPH MCGIRL, the defendant, and others known and unknown, unlawfully, willfully and knowingly would and did attempt to evade and defeat a substantial part of the payroll tax obligations due and owing by the Companies, in violation of Title 26, United States Code, Section 7201.

11. It was a further part and an object of the conspiracy that, during the period from in or about 2001 through in or about 2002, JOSEPH MCGIRL, the defendant, and others known and unknown, unlawfully, willfully and knowingly would and did make and cause to be made, and subscribe to and cause to be subscribed to, U.S. Corporate Income Tax Returns, Forms 1120S, for the Companies for the tax years 2000 and 2001, which returns contained and were verified by written declarations that they were made under the penalties of perjury, and which JOSEPH MCGIRL, the defendant, and CC-1 did not believe to be true and correct as to every material matter, in violation of Title 26, United States Code, Section 7206(1).

12. It was a further part and object of the conspiracy that JOSEPH MCGIRL, the defendant, and others known and unknown, unlawfully, willfully and knowingly, and for the purpose of evading the reporting requirements of Title 31, United States

Code, Section 5313(a) and the regulations prescribed under that section, to wit, the requirement to file CTRs, would and did structure and assist in structuring, and attempt to structure and assist in structuring, transactions with one and more domestic financial institutions, while violating other laws of the United States, in violation of Title 31, United States Code, Sections 5324(a)(3) and (d)(2).

### Overt Acts

13.   In furtherance of said conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

    a.   On or about November 11, 1997, JOSEPH MCGIRL, the defendant, and CC-1 opened a bank account in Yonkers, New York for DJ McKeon, Inc., using a false Yonkers address.

    b.   From in or about January 1997, through in or about December 1998, MCGIRL and CC-1 wrote approximately 140 checks totaling approximately $1,346,498, drawn on bank accounts of the Companies and made payable to DJ McKeon, Inc. for amounts that were falsely categorized on the books and records of the Companies as subcontracting expenses.

    c.   On or about September 14, 1998, MCGIRL and CC-1 incorporated Hubert Quinn, Inc., using a false address in Yonkers, New York.

    d. From in or about December 1998 through in or about December 1999, MCGIRL and CC-1 wrote approximately 104 checks totaling approximately $880,260, drawn on bank accounts of the Companies and made payable to Hubert Quinn, Inc., for amounts that were falsely and fraudulently booked by the Companies as subcontracting expenses.

    e. From in or about May 2000 through in or about August 2001, MCGIRL and CC-1 hid and concealed a total of approximately $554,505 in income of the Companies by instructing a client of the Companies to make payment via checks structured in amounts below $10,000, resulting in the receipt by MCGIRL and CC-1 of approximately sixty checks in amounts below $10,000, which MCGIRL and CC-1 cashed at a check-cashing establishment in New York, New York.

    f. On or about April 15, 2001, MCGIRL filed a false U.S. Individual Income Tax Return, Form 1040, which omitted significant amounts of income MCGIRL had received from S-corporations that he owned.

    g. On or about April 15, 2002, MCGIRL filed a false U.S. Individual Income Tax Returns, Form 1040, which omitted significant amounts of income MCGIRL had received from S-

corporations that he owned.

(Title 18, United States Code, Section 371.)

### COUNTS TWO AND THREE
(Subscribing To False U.S. Income Tax Returns)

The United States Attorney further charges:

14. The allegations contained in paragraphs 1 through 7 and 13 are repeated and realleged as if fully set forth herein.

15. On or about the filing dates set forth below, in the Southern District of New York and elsewhere, JOSEPH MCGIRL, the defendant, unlawfully, willfully, and knowingly did make and subscribe joint U.S. Individual Income Tax Returns, Form 1040, on behalf of himself and his wife for the tax years set forth below, each of which contained and was verified by MCGIRL's written declaration that it was made under the penalties of perjury, and each of which tax returns he did not believe to be true and correct as to every material matter, in that each joint income tax return falsely omitted the amounts of income set forth below, which MCGIRL received from S-corporations that he owned:

| COUNT | TAX YEAR | DATE OF FILING | FALSELY OMITTED INCOME |
|---|---|---|---|
| 2 | 2000 | 4/15/01 | $147,250 |
| 3 | 2001 | 4/9/02 | $130,002.50 |

(Title 26, United States Code, Section 7206(1).)

### FORFEITURE ALLEGATION WITH RESPECT TO COUNT ONE

16. As a result of committing the foregoing offense, in violation of 18 U.S.C. § 371, alleged in Count One of this

Information, JOSEPH MCGIRL, the defendant, shall forfeit to the United States, pursuant to 31 U.S.C. § 5317, all property, real and personal, involved in the offense or traceable to such property, including, but not limited to, the following:

        a.  At least $118,998 in United States currency, in that such sum in aggregate is property which was involved in the conspiracy to violate 31 U.S.C. § 5324 or is traceable to such property.

### Substitute Assets Provision

        b.  If any of the property described above as being subject to forfeiture, as result of any act or omission of the defendant,

> i.   cannot be located upon the exercise of due diligence;
>
> ii.  has been transferred or sold to, or deposited with, a third party;
>
> iii. has been placed beyond the jurisdiction of the court;
>
> iv.  has been substantially diminished in value; or
>
> v.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 21,

United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

>(Title 18, United States Code, Section 371;
>Title 21, United States Code, Section 853(p);
>Title 31, United States Code, Sections 5317, 5324)

*[signature: Michael Garcia]*
_____
MICHAEL J. GARCIA SJR
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v. -

### JOSEPH MCGIRL,

**Defendant.**

### INFORMATION

07 Cr.           (CM)

(Title 18, United States Code,
Sections 371 and 2;
Title 26, United States Code, Section
7206(1))

MICHAEL J. GARCIA
United States Attorney.